Atherton, J.
The question presented by this record is, whether, under the state of facts disclosed, Anderson can be held as the putative father of this child, and be required to contribute to its support, or whether Riddlemoser, having married the complainant^ with full knowledge of her condition, is alone liable for its support.
The Revised Statutes provide: “ Sec. 5614. When an unmarried woman, who has been delivered of or is pregnant with a bastard child, makes complaint thereof in writing, under oath, before any justice of the peace, charging a person with being the father of such child, the justice shall thereupon issue his warrant,” etc.
Can the child in this ease, in legal contemplation, be regarded as a bastard ?
Blaekstone, under the inquiry, “Who are bastards?” says: “A bastard, by our English laws, is one that is not only begotten, hut born out of lawful matrimony.” 1 Blaekstone, 454. And Kent also defines illegitimate children *476 or bastards as “ being persons who are begotten and born out of lawful wedlock.” 2 Kent, 208.
In Best on Presumptions, in discussing presumptions of legitimacy, the author says: “ One of the strongest illustrations of this principle (although resting in some degree on grounds of public policy) is the presumption in favor of the legitimacy of children ” . . . “ Thus it is said to be a presumption, juris et de jure, that a child born during wedlock, and of which the mother was visibly pregnant at the time of marriage, must be taken to be the offspring of the husband.” Section 58.
The supreme court of Iowa, in the case of The State v. Romaine, 58 Iowa, 48, lays down the rule that “ if a woman be pregnant at the time of the marriage, and if the pregnancy be known to the husband, he should be conclusively presumed to be the father.”
In State v. Herman, 13 Ired. 502, the supreme court of North Carolina held that “ a child born in wedlock, though born within a month or a day after marriage, is legitimate by presumption of law, and where the mother was visibly pregnant at the marriage, it is a presumption juris et de jure that the child was the offspring of the husband.”
And in Rhym v. Hoffman, 6 Jones Eq. N. C. 335, the court quote with approval a quotation from 1 Roll’s Abr. 358, and 2 Bac. Abr. 84, as follows: “ So, if the woman be big with child by A., marry B., and then the child is born, it is the legitimate child of B.”
It has been held in a large number of cases, both in England and America, that the wife is not a competent witness to prove non-access of the husband, whether the child was begotten before or after marriage.
In Rex v. Reading, Hardw. 79, Lord Hardwicke said, “ it must be of very dangerous consequence, to lay it down in general, that a wife should be a sufficient sole evidence to bastardize her child, and to discharge her husband of the burthen of its maintenance.”
Similar language is used by Lord Ellenborough in The *477 King v. Luffe, 8 East, 193, and in various English authorities.
The reason for this rule is stated in Tioga County v. South Creek Township, 75 Pa. St. 433, in the following language: “ That issue born in wedlock, though begotten before, is presumptively legitimate, is an axiom of law so well established that to cite authorities in support of it would be mere waste of time. So the rule that the parents will not be permitted to prove non-access for the purpose of bastardizing such issue is just as well settled. Many reasons have been given for this rule. Prominent among them is the idea that the admission of such testimony would be unseemly and scandalous, and this not so much from the fact that it reveals immoral conduct upon the part of the parents, as because the effect it may have upon the child, who is in no fault, but who must, nevertheless, be the chief sufferer thereby. That the parents should be permitted to bastardize the child, is a proposition which shocks our sense of right and decency, and hence the rule of law that forbids it.”
This doctrine is recognized in Parker v. Way, 15 N. H. Rep. 45 ; Davis v. Houston, 2 Yeates, 289; Page v. Dennison, 1 Grant’s Gases, 377; s. c., 29 Pa. St. 420, in which ease the court in addition hold that: “Whether the child is begotten in or out of wedlock, if marriage precedes the birth, the presumption of paternity is the same, and it can only be bastardized by proof of non-access. The wife is not a competent witness to prove non-access on the part of her husband, and that her child begotten before, but born during wedlock, was not begotten by him.”
On the same point see State v. Wilson, 10 Ired. 131, and State v. Herman, supra, in both of which cases the pregnancy preceded the marriage.
The cases are collected on this point in 1 Phil, on Ev. *87, and note, and the reason of the rule stated in the text, as follows: “ This rule is established, independently of any possible motives of interest in the particular case, upon principles of public policy and decency.”
*478 It will be observed that after the complainant in the case had submitted her evidence and rested, the defendant moved to arrest the case from the jury and dismiss the complaint upon the ground that the testimony offered made no case against defendant, and if no competent testimony of non-access had been offered the motion was well taken. But the court overruled the motion and defendant excepted. Whether, under our statute relating to evidence, the complainant was incompetent to prove non-access, we do not feel compelled to decide, for the case can be determined without it. ^
The question yet remains, whether, if Riddlemoser, by contracting marriage with the complainant, and putting himself in loco parentis, and assuming the place of a parent and his duties and obligations, has legitimated the child or not, for if by that act the child in legal contemplation is the child of Riddlemoser, it is not a bastard, and the defendant can not be held under our bastardy act.
No case in point has been adjudicated in Ohio, so far as our reports show.
This court, in Roth v. Jacobs, 21 Ohio St. 646, held that after a woman, pregnant with child, had filed her sworn complaint in bastardy, charging the defendant with the paternity of her unborn child, her subsequent marriage with another did not necessarily vrork a discontinuance of the action, for the reason, as the court say, that it can not be conclusively presumed that the man who marries a pregnant woman is the father of the child. He may not have known that she was in that condition when he married her, and therefore, if born alive, it may be a bastard. There was no suggestion in that case of what the result would have been had the marriage been contracted by a man with fall knowledge of the pregnancy.
In Haworth v. Gill, 30 Ohio St. 627, it was attempted to make a defendant liable under the bastardy act by showing that \vhile complainant was the wife of another he became the father of her unborn child.
After the child was born the complainant procured a di *479 vorce from her former husband, and the court held that to make defendant liable the delivery and pregnancy, as well as the making of the complainant, must be predicated of an unmarried woman. The court in that case suggestively say: “ But no complaint could have been made m this case, either during pregnancy or for eight months aner delivery. The child was, during all this time, the iunocont and honest child of a married woman; and in any proceeding under this act, would have been conclusively presumed to be legitimate. The subsequent divorce of the mother may have changed her status, but not that of her child. . . . It dissolved the marital relation, but did not bastardize the issue begotten and born during its continuance.”
So we say here: By the act of Riddlemoser in marrying the complainant he most solemnly and effectively acknowledged the unborn child to be his own. He knew her condition, and every honorable sentiment would require him to marry her if the child was his and to avoid her if it was not. He chose to marry her and thus legitimate her issue and make it his own. The act would have made the child heir to his estate, and, being made so by his act, can the inhuman mother, by her uncorroborated testimony, make it a bastard ? We have a statute, Revised Statutes, section 4175, providing, that when a man has children by a woman, and afterward intermarries with her, such issue, if acknowledged by him as his children, are deemed legitimate, and will then have all the rights of heirship and inheritance of children born in wedlock.
Suppose a woman has children believed by a man who afterward marries her to be his; that he contracts marriage with the mother, and fully acknowledges the children to be his own, can they be bastardized by proving somebody else begat them, and especially can theiy mother bastardize them and take from them the rights they acquired by the marriage of their mother with the man that acknowledged them to be his own ?
A case precisely in point with the one under considera ■ *480 tion has recently been determined by the supreme court of Iowa — State v. Shoemaker, 62 Iowa, 348.
In that case a child was begotten by the defendant, and during the pregnancy of the complainant, and two months before the birth of the child, she was married to another man, who was fully informed that complainant was enciente, and her condition apparent from her appearance. Upon these facts the court held that the defendant could not be made liable under the bastardy act. The reasoning of the court was in substance as follows, and this court adopts it as its own.
If another man, not the father of the unborn child, elects to stand in loco parentis to the child, the law will esteem such man as the father; that one who marries a woman that he knows to be enciente is regarded in law as adopting the child into the family at its birth; that he could not expect the mother to discard it or abandon it at its birth, or refuse it nurture or maintenance, and that the child, so receiving nurture ' and support, must necessarily become one of the family of the wife, which would also be of the family of the husband; that this understanding must necessarily enter into the marriage contract of the husband and wife, and when this relation is established the law raises a conclusive presumption that the husband is the father of such child.
As recognized in that case, we do not affirm this rule holds good on questions of heirship. There the lights of others are involved outside of the husband and the alleged bastard child. But in such a case as this the rights and liabilities of husband and child alone are involved.
The court say: “A husband who, in the manner we have indicated, has put himself in loco parentis of a bastard child of his wife, ought not to be permitted to disturb the family relation, and bring scandal upon his wife and her child, by establishing its bastardy, after he has condoned the wife’s offense by taking her in marriage.”
And this rule, as announced, is established upon obvious principles of public policy and decency. This child *481 was bora in 1865. The husband had prior thereto condoned the wife’s offense, and by taking her in marriage, with full knowledge of her condition, adopted her child on its birth into his family, and, even if he was not its natural father, consented to stand in law as such, with all the rights and responsibilities of a father in fact. The child became entitled to his protection and support, and owed him its duty and service, and was legitimated and legitimate, and the “ honest child of wedlock.” So it remained until sixteen years of age. Public policy, public decency, and every consideration which concerns the peace and well-being of the family, cries out against the unnatural effort of the mother to bastardize her issue.
Our conclusion is that the judgment of the district court should be

Affirmed.